UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
DOWLAT RAMPERSAUD,

Plaintiff,

-against-

**COMPLAINT**
**Plaintiff Demands A**
**Trial by Jury**

940 CORP., 2855 MGMT, LLC, MICHAEL GOLDBERG,
JENNARY DUFRESNE, JENNY LNU and JOHN DOE 1,
Joughtly and Severally,

**Defendants.**
--------------------------------------------------------------------------------X

Plaintiff, by DEVON M. WILT, his attorney, respectfully alleges as follows:

***INTRODUCTION***

1.      Plaintiff ***DOWLAT RAMPERSAUD ("RAMPERSAUD")***, an employee of the

defendants **940 CORP., 2855 MGMT, LLC ("2855 MGMT"), MICHAEL GOLDBERG**

**("GOLDBERG"), JENNARY DUFRESNE ("DUFRESNE"), JENNY LNU ("JENNY")** and

**JOHN DOE 1 (JD1) (collectively "Defendants"),** alleges of Defendants', jointly and severally,

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216 (b), that he is entitled to

recover: (i) unpaid overtime wages from Defendants for which he did not receive overtime

premium pay as required by law; (ii) spread of hours wages pursuant to New York Labor Law;

(iii) liquidated damages under the FLSA, 29 U.S.C. §§ 201 *et seq.*; (iv) pre-judgment and post

judgment interest; (v) and reasonable attorneys' fees under the Fair Labor and Standards Act of

1938, as amended (29 USC § 201, et. seq.) ("FLSA") and the various wage orders promulgated

by the U.S. Department of Labor and codified in 29 C.F.R. § 500 et. seq., and the New York

Labor Law Articles 6 and 19 and various wage orders promulgated by the New York State

Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-146.

2.     Plaintiff further complains, under Fed. R. Civ. P. 23 that he is entitled to: (i) back wages from Defendants for off-the-clock, spread of hours wages and overtime work for which he did not receive overtime premium pay, as required by the New York Labor Law ("NYLL") §§ 650 *et seq.,* including Part 142, § 142-2.2 ("Overtime Rate") of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor under the Minimum Wage Act (Article 19 of the NYLL); (ii) penalties for Defendants' violations of their record keeping requirements under NYLL § 195; and (iii) liquidated damages under the NYLL, as amended by the Wage Theft Prevention Act ("WTPA").

3.     Plaintiff seeks declaratory and injunctive relief; an award of monetary damages for the economic losses caused by Defendants' unlawful conduct, specifically non-payment of overtime wages; an award of liquidated damages under the FLSA and NYLL; prejudgment interest on the unpaid wages pursuant to NYLL; Plaintiff's reasonable attorney's fees' and costs of this action; and such other and further relief that this Court deems just and equitable.

## *JURISDICTION & VENUE*

4.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1337, § 1343 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. In addition, this Court has jurisdiction over Plaintiff's claims under FLSA 29 U.S.C. § 216(b).

5.     Venue is proper in this district under 28 U.S.C. 1391 as a substantial part of the events giving rise to Plaintiff's claims occurred in the County of the Bronx, in the Southern District of New York.

6.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## *PARTIES*

7.     Plaintiff, ***DOWLAT RAMPERSAUD (RAMPERSAUD),*** is and was at all times herein mentioned, a citizen and a resident of the County of Bronx, City and State of New York.

8.     The Defendant, **940 CORP.,** was and still is a domestic business corporation duly organized and existing by virtue of, the laws of the State of New York and maintains a principal place of business at 5600 A Broadway, Bronx, New York 10463.

9.     That at all times herein mentioned, Defendant **940 CORP.** owned, managed, controlled and maintained the residential apartment building located at 940 Grand Concourse in the County of Bronx.

10.     That at all times herein mentioned, Defendant **GOLDBERG** was President, CEO, Principal, Head Officer and Founder of Defendant **940 CORP.** and owns, operates and/or controls the day-to-day operations and management of Defendant **940 CORP.**

11.     At all times relevant to this action, Defendant **GOLDBERG** possessed and exercised operational control and policy making authority over Defendants **940 CORP.** and **2855 MGMT** employment policies, compensation polices, work schedules and conditions of employment, determined the rate and method of employees payment, kept some records regarding employees, budgets and payment of employee wages, and, as such, can be held individually liable for non-payment of Plaintiff's wages.

12.     The address of Defendant **GOLDBERG** is presently unknown but his business address is 5600 A Broadway, Bronx, New York 10463.

13.     That at all times herein mentioned, Defendant **DUFRESNE** was the Managing Agent of Defendant **940 CORP.** and operates and/or controls the day-to-day operations and management of Defendant **940 CORP.**

14.    At all times relevant to this action, Defendant **DUFRESNE** possessed and exercised operational control and policy making authority over Defendants **940 CORP.** and **2855 MGMT** employment policies, compensation polices, work schedules and conditions of employment, determined the rate and method of employees payment, kept some records regarding employees, budgets and payment of employee wages, and, as such, can be held individually liable for non-payment of Plaintiff's wages.

15.    The address of Defendant **DUFRESNE** is presently unknown but her business address is 5600 A Broadway, Bronx, New York 10463.

16.    That at all times herein mentioned, Defendant, **2855 MGMT, LCC (2855 MGMT),** was and still is a domestic business corporation duly organized and existing by virtue of, the laws of the State of New York and maintains a principal place of business at 5600 A Broadway, Bronx, New York 10463.

17.    That at all times herein mentioned, Defendant **JENNY LNU ("JENNY")** was President, CEO, Principal, Head Officer, Managing Agent and Founder of defendant **2855 MGMT** and owns, operates and/or controls the day-to-day operations and management of Defendant **2855 MGMT.**

18.    At all times relevant to this action, upon information and belief, Defendants **GOLDBERG** and **DUFRESNE** hired defendant **JENNY** to act as President, CEO, Principal, Head Officer, Managing Agent and Founder of defendant **2855 MGMT.**

19.    At all times relevant to this action, Defendant **JENNY** possessed and exercised operational control and policy making authority over Defendant **2855 MGMT** employment policies, compensation polices, work schedules and conditions of employment, determined the rate and method of employees payment, kept some records regarding employees, budgets and

payment of employee wages, and, as such, can be held individually liable for non-payment of Plaintiff's wages.

20.     The address of Defendant **JENNY** is presently unknown but his business address is 5600 A Broadway, Bronx, New York 10463.

21.     That at all times herein mentioned, Defendant **JOHN DOE 1 ("JD1")** was co-President, co-CEO, co-Principal, co-Head Officer, Managing Agent and co-Founder of defendant **2855 MGMT** and owns, operates and/or controls the day-to-day operations and management of Defendant **2855 MGMT.**

22.     At all times relevant to this action, upon information and belief, Defendants **GOLDBERG** and **DUFRESNE** hired defendant **JD1** to act as co-President, co-CEO, co-Principal, co-Head Officer, Managing Agent and co-Founder of defendant **2855 MGMT.**

23.     At all times relevant to this action, Defendant **JD1** possessed and exercised operational control and policy making authority over Defendant **2855 MGMT** employment policies, compensation polices, work schedules and conditions of employment, determined the rate and method of employees payment, kept some records regarding employees, budgets and payment of employee wages, and, as such, can be held individually liable for non-payment of Plaintiff's wages.

24.     The address of Defendant **JD1** is presently unknown but his business address is 5600 A Broadway, Bronx, New York 10463.

25.     The Court has personal jurisdiction over Defendants **940 CORP.** and **2855 MGMT** because they are incorporated and conduct business in the State of New York.

26.     That at all times herein mentioned, Defendant **940 CORP.** created Defendant **2855 MGMT** as a management company for the residential building located at 940 Grand Concourse in the County of Bronx.

27.     Defendants **940 CORP.** and **2855 MGMT** share the same address for service of process and business.

28.     Defendant **940 CORP.** created and hired Defendant **2855 MGMT** as a liability shield for unlawful activity conducted by Defendant **2855 MGMT.**

29.     Defendants **940 CORP., 2855 MGMT, GOLDBERG**, **DUFRESNE, JENNY** and **JD1,** jointly and severally, employed Plaintiff as an employee and acted intentionally and maliciously and are "employers" under the FLSA, 20 U.S.C. § 203(d), and the regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the NYLL Section 2 and the regulations thereunder and are jointly and severally liable.

30.     At all times relevant to this action, Plaintiff was an "employee" of Defendants', **940 CORP., 2855 MGMT, GOLDBERG, DUFRESNE, JENNY** and **JD1,** jointly and severally, within the meaning of applicable Federal and State statutes and regulations.

31.     That at all the times herein mentioned, Plaintiff was employed by Defendants' as a porter, maintenance and laborer for the residential apartment building located at 940 Grand Concourse in the County of Bronx.

32.     Defendant **940 CORP.** was an "enterprise" and an "enterprise engaged in interstate commerce" as defined by the FLSA, 29 U.S.C. §§ 203(r) and (s), and is covered by the FLSA.

33.     Defendant **2855 MGMT** was an "enterprise" and an "enterprise engaged in interstate commerce" as defined by the FLSA, 29 U.S.C. §§ 203(r) and (s), and is covered by the FLSA.

34.     Defendant **940 CORP.** is an enterprise engaged in commerce or in the production of goods for commerce. Defendant **940 CORP.** is engaged in commerce or in the production of goods for commerce, because, *inter alia,* it has employees that handle goods and materials that have been produced for and moved in commerce and, upon information and belief, its annual gross volume of business is at least five hundred thousand dollars ($500,000.00). These goods and materials that have been produced for and moved in commerce, both in and out of New York State, which its employees have handled, sold or otherwise working on goods or materials that have been moved in or produced for commerce by any person, including but not limited to: lawn mowers, snow/leaf blowers, heat exchangers, compressors, heating oil, boiler parts, cleaning machines, plumbing repair parts, electrical appliance parts, janitorial products and supplies, light bulbs, cleaning chemicals, paints, floor finishing chemicals, replacement lock sets, panes of glass, refrigerator and stove parts, nails, screws, paint rollers, glazier's putty, trash bags and cans, shovels, brooms, mops, snow salts, rakes, pails, scrapers, books and flashlights.

35.     Defendant **2855 MGMT** is an enterprise engaged in commerce or in the production of goods for commerce. Defendant **2855 MGMT** is engaged in commerce or in the production of goods for commerce, because, *inter alia,* it has employees that handle goods and materials that have been produced for and moved in commerce and, upon information and belief, its annual gross volume of business is at least five hundred thousand dollars ($500,000.00). These goods and materials that have been produced for and moved in commerce, both in and out of New York State, which its employees have handled, sold or otherwise working on goods or

materials that have been moved in or produced for commerce by any person, including but not limited to: lawn mowers, snow/leaf blowers, heat exchangers, compressors, heating oil, boiler parts, cleaning machines, plumbing repair parts, electrical appliance parts, janitorial products and supplies, light bulbs, cleaning chemicals, paints, floor finishing chemicals, replacement lock sets, panes of glass, refrigerator and stove parts, nails, screws, paint rollers, glazier's putty, trash bags and cans, shovels, brooms, mops, snow salts, rakes, pails, scrapers, books and flashlights.

36.     In the course of performance of their duties, Defendants', **940 CORP., 2855 MGMT, GOLDBERG**, **DUFRESNE, JENNY** and **JD1,** jointly and severally, their agents, servants, officers and employees handle, produce, sell or otherwise work on all or some of the above described goods or materials regularly purchased by Defendants. In addition, Defendants order and pay for their goods and materials, and also receive rents and maintenance payments, through the internet using and accepting payments by debit and credit cards.

## STATEMENT OF FACTS

37.     That at all the times herein mentioned, Defendant **940 CORP.** owned the residential building located at 940 Grand Concourse in the County of Bronx.

38.     That at all the times herein mentioned, the Defendant **2855 MGMT** provided management services for residential buildings in the State of New York, including but not limited to, porters, custodial and sanitation services for a residential building located at 940 Grand Concourse in the County of the Bronx.

39.     Defendant **2855 MGMT** provide their services primarily in the County of Bronx with defendant **940 CORP.** as the main client.

40.     Defendants employed Plaintiff *RAMPERSAUD* as a maintenance, porter or laborer from May 1, 2007 to date.

41.     The building located at 940 Grand Concourse consists of five (5) sections and has 107 apartment units; Section "ABC"; Section "DEFG"; Section "HIJ"; Section "KLM"; and Section "NOPRS".

42.     Section "ABC" of 940 Grand Concourse is six (6) floors with three (3) apartments per floor.

43.     Section "DEFG" of 940 Grand Concourse is six (6) floors with four (4) apartments per floor.

44.     Section "HIJ" of 940 Grand Concourse is six (6) floors with three (3) apartments per floor.

45.     Section "KLM" of 940 Grand Concourse is six (6) floors with three (3) apartments per floor.

46.     Section "NOPRS" of 940 Grand Concourse is six (6) floors with four (4) on the 1st floor and five (5) apartments on floors 2nd through 6th.

47.     As maintenance, porter or laborer, the primary duties of Plaintiff were including but not limited to the following for **each** section: janitorial duties; maintenance; handyman; separate each Buildings garbage into recyclables and non-recyclables by hand; remove pests from the Building, specifically dead rats and roaches; make repairs in the Building; perform menial duties such as: cleaning, sweeping, removing the garbage and trash; tending to needs of tenants of the Building; tending and maintaining all common areas; tending and maintaining the outside of the Building; cutting grass; removing snow and ice; and generally responsible for the upkeep and efficient running of the Building.

48.     Defendant **GOLDBERG** has the authority to and does make decisions regarding Plaintiffs' work schedule, work location(s) (which buildings require specific maintenance work) and compensation.

49.     Defendant **GOLDBERG** has the authority to and does make hiring and firing decisions regarding the Plaintiff.

50.     Defendant **DUFRESNE** has the authority to and does make decisions regarding Plaintiffs' work schedule, work location(s) (which buildings require specific maintenance work) and compensation.

51.     Defendant **DUFRESNE** has the authority to and does make hiring and firing decisions regarding the Plaintiff.

52.     Defendant **JENNY** has the authority to and does make decisions regarding Plaintiff's work schedule, work location(s) (which buildings require specific maintenance work) and compensation.

53.     Defendant **JENNY** has the authority to and does make hiring and firing decisions regarding the Plaintiff.

54.     Defendant **JD1** has the authority to and does make decisions regarding Plaintiff's work schedule, work location(s) (which buildings require specific maintenance work) and compensation.

55.     Defendant **JD1** has the authority to and does make hiring and firing decisions regarding the Plaintiff.

56.     Throughout the time Defendants employed Plaintiff, Defendants' have likewise employed other individuals like Plaintiff in positions that required little skill and no capital

10

investment, and their duties and responsibilities did not include any managerial responsibilities, or the exercise of independent judgment.

### *May 1, 2007 to May 5, 2012*

57.     From May 1, 2007 to May 5, 2012, Plaintiff worked for Defendants, jointly and severally, Monday through Sunday between the hours of 6:00 A.M. to 5:30 P.M. for a total of eleven (11 1/2) hours (80 ½ hours a week), as the porter or maintenance worker; performing duties including but not limited to, janitorial duties; maintenance; handyman; separate each of the Buildings garbage into recyclables and non-recyclables by hand; remove pests from the Building, specifically dead rats and roaches; make repairs in the Building; perform necessary duties such as: cleaning, sweeping, removing the garbage and trash; tending to needs of tenants of the Building; tending and maintaining all common areas; tending and maintaining the outside of the Building; cutting grass; removing snow and ice; and generally responsible for the upkeep and efficient running of the Building.

58.     From May 2007 to date, Defendants' required Plaintiff to purchase a uniform for work.

59.     To date, Defendants' have never reimbursed Plaintiff for his uniform and work expenses.

60.     From May 2007 to May 5, 2012, Plaintiff was not allowed any paid-time-off, sick or vacation time.

61.     Defendants did not require or permit Plaintiff to sign in and out of work on his shifts.

62.     Defendants never provided Plaintiff with shift hours for his work duties.

63.     Defendants demanded that Plaintiff work each day until his duties were completed for that day.

64.     Defendants work duty demands of Plaintiff would result in Plaintiff working more than forty (40) hours per week.

65.     Defendants demanded Plaintiff work on the weekends.

66.     Plaintiff kept and recorded his hours in a personal diary.

67.     From May 2007 to May 5, 2012, Defendants, jointly and severally, paid Plaintiff $350.00 per week in cash which would total $8.75 per hour for a forty (40) hour work week.

68.     Defendants' payroll practice of paying Plaintiff $350.00 per week in cash was designed to: (1) avoid informing Plaintiff that he had worked more than forty (40) hours that week and thus entitled to overtime premium pay; and (2) to make Plaintiff believe that he could not request additional monies for the overtime hours worked because he did not receive a check verifying his employment.

69.     Plaintiff worked more than forty (40) hours every week.

70.     Plaintiff worked approximately eighty and one-half (80 1/2) hours a week which totals forty and one half (40 ½) hours of overtime every week.

71.     Defendants had actual and constructive knowledge that Plaintiff worked more than forty (40) hours a week.

72.     Defendants failed to pay Plaintiff premium pay of one and one-half (1 ½) times his regular hourly rate of pay for any hour he worked in excess of forty (40) hours per week.

73.     Defendants had actual and constructive knowledge that Plaintiff worked each day for more than ten (10) hours each shift.

74.     Defendants did not pay Plaintiff for his spread of hours wages.

75.    Defendants did not compensate Plaintiff for all hours worked.

### *May 5, 2012 to May 5, 2015*

76.    On or about May 5, 2012, Defendants' hired JOHN DOE 2 as a porter for 940 Grand Concourse, Bronx, New York.

77.    On or about May 5, 2012, Defendant **JD1** informed Plaintiff that JOHN DOE 2 was assigned to Sections "ABC" and "DEFG" and that he had the remaining three (3) Sections: "HIJ," "KLM," and "NOPRS."

78.    On or about May 5, 2012, Defendants informed Plaintiff that he would be receiving a check as payment for his work, as follows: one hundred ($100.00) dollar raise in pay, one (1) day off each week (Sunday) and two (2) weeks of vacation time.

79.    Defendants did not inform Plaintiff that he had sick time.

80.    Defendants did not require Plaintiff to sign in and out of work on his shifts.

81.    Defendants never provided Plaintiff with shift hours for his work duties.

82.    Defendants demanded Plaintiff work until his duties were completed for that day.

83.    Defendants work duty demands of Plaintiff would result in Plaintiff working more than forty (40) hours per week and not being paid for his work.

84.    Plaintiff kept and recorded his hours by a personal diary.

85.    From May 5, 2012 to May 5, 2015, due to the work demands of Defendants, Plaintiff continued to work seven (7) days a week from 6:00 A.M. to 5:30 P.M (11 ½ Hours) each day as the porter or maintenance worker; performing duties including but not limited to, janitorial duties; maintenance; handyman; separate each of the Buildings garbage into recyclables and non-recyclables by hand; remove pests from the Building, specifically dead rats

and roaches; make repairs in the Building; perform necessary duties such as: cleaning, sweeping, removing the garbage and trash; tending to needs of tenants of the Building; tending and maintaining all common areas; tending and maintaining the outside of the Building; cutting grass; removing snow and ice; and generally responsible for the upkeep and efficient running of the Building.

86. From May 5, 2012 to date, every week Defendant **JD1** gave Plaintiff a paycheck in the gross amount of $454.42 for forty (40) hours of work at $11.36 per hour.

87. Defendants' payroll practice of paying Plaintiff by a check for forty (40) hours of work was designed to: avoid informing him that he had worked more than forty (40) hours that week and thus entitled to overtime premium pay.

88. Plaintiff worked approximately eighty and one-half (80 1/2) hours a week which totals forty and one half (40 ½) hours of overtime every week.

89. Defendants had actual and constructive knowledge that Plaintiff worked more than forty (40) hours a week.

90. Defendants failed to pay Plaintiff premium pay of one and one-half (1 ½) times their regular hourly rate of pay for any hour he worked in excess of forty (40) per week.

91. Defendants' had actual and constructive knowledge that Plaintiff worked every day for more than ten (10) hours each shift.

92. Defendants' never paid Plaintiff for his spread of hours wages.

93. Defendants failed to compensate Plaintiff for all hours worked.

### *May 5, 2015 to date*

94. On or about May 5, 2015, Defendant **JENNY** informed Plaintiff that he was to have two (2) days off each week: Tuesday and Sunday.

95.     From May 5, 2015 to date, Plaintiff worked for Defendants, jointly and severally, five (5) days a week between the hours of 6:00 A.M. to 5:30 P.M (11 ½ Hours) each day and fifty-seven and one-half (57 ½) hours a week as the porter or maintenance worker; performing duties including but not limited to, janitorial duties; maintenance; handyman; separate each of the Buildings garbage into recyclables and non-recyclables by hand; remove pests from the Building, specifically dead rats and roaches; make repairs in the Building; perform necessary duties such as: cleaning, sweeping, removing the garbage and trash; tending to needs of tenants of the Building; tending and maintaining all common areas; tending and maintaining the outside of the Building; cutting grass; removing snow and ice; and generally responsible for the upkeep and efficient running of the Building.

96.     Defendants did not inform Plaintiff that he was entitled to sick time.

97.     Defendants did not require Plaintiff to sign in and out of work on his shifts.

98.     Defendants never provided Plaintiff with shift hours for his work duties.

99.     Defendants demanded Plaintiff work each day until his duties were completed for that day.

100.    Defendants work duty demands of Plaintiff would result in Plaintiff working more than forty (40) hours per week.

101.    Plaintiff kept and recorded his hours in a personal diary.

102.    From May 5, 2015 to date, every week Defendant **JD1** gave Plaintiff a paycheck in the gross amount of $454.42 for forty (40) hours of work at $11.36 per hour.

103.    Defendants' payroll practice of paying Plaintiff by a check for forty (40) hours of work was designed to: avoid informing him that he had worked more than forty (40) hours that week and thus entitled to overtime premium pay.

104.     Plaintiff worked approximately fifty-seven and one-half (57 1/2) hours a week which totals seventeen and one-half (17 ½) hours of overtime every week.

105.     Defendants had actual and constructive knowledge that Plaintiff worked more than forty (40) hours a week.

106.     Defendants failed to pay Plaintiff premium pay of one and one-half (1 ½) times their regular hourly rate of pay for any hour he worked in excess of forty (40) per week.

107.     Defendants had actual and constructive knowledge that Plaintiff worked every day for more than ten (10) hours each shift.

108.     Defendants never paid Plaintiff for his spread of hours wages.

109.     Defendants failed to compensate Plaintiff for all hours worked.

### *Notice Of Rights to a Minimum Wage and Overtime Pay*

110.     At all dates and times herein while working for Defendants, Plaintiff did not see any poster or notice at Defendant **2844 MGMT** place of business advising employees of their rights to a minimum wage or overtime premium pay.

111.     At all dates and times herein while working for Defendants, Plaintiff did not see any poster or notice at Defendant **940 CORP** place of business advising employees of their rights to a minimum wage or overtime premium pay.

112.     Defendants did not provide Plaintiff with the Notice and Acknowledgement of Pay Rate and Payday under NYLL § 195.1 when he was hired or at any time during his employment.

113.     While working for Defendants, Plaintiff was never provided with any poster, written document or notice advising him of his rights to a minimum wage or overtime premium pay.

### *Record Keeping*

114.    From May 2007 to date, information and belief, Defendants failed to maintain accurate and sufficient time records.

### *Forced to Hire Help*

115.    From May 2007 to date, Plaintiff was forced to hire another worker and pay that worker out of his own monies for help with certain work duties at the Building for Defendants, which he was unable to complete or perform by himself including but not limited to: (1) cleaning and removing snow surrounding 940 Grand Concourse; (2) removing and salting ice surrounding 940 Grand Concourse; (3) removing and cleaning up debris from trees surrounding 940 Grand Concourse; and (4) separating 940 Grand Concourse's tenants garbage into recyclables and non-recyclables.

116.    Plaintiff was never compensated by Defendants for the monies he expended on hiring workers to help him perform and complete his daily work duties.

### *Tickets, Fines and Sanctions*

117.    In May of 2007, Defendants' informed Plaintiff that if the building received any tickets, fines or sanctions from the City of New York, specifically from the New York City Sanitation Department, Plaintiff was responsible to pay the tickets, fines and sanctions since his job was to maintain the building and any and all monies due would be deducted from Plaintiff's pay.

118.    Due to Defendants demand that Plaintiff be responsible for any and all tickets, fines and sanctions, Plaintiff arrived to work early everyday to complete his garbage and sidewalk detail duties to avoid any tickets, fines and sanctions.

119.    Due to the amount of the buildings garbage, Plaintiff could not take one (1) day off of work.

120.    From May 2007 to date, on more than three (3) occasions, Plaintiff was forced to pay by Defendants for tickets, fines and sanctions received by the building and blamed on him and Defendants have refused to reimburse Plaintiff for those tickets, fines and sanctions received by the building.

### *Failure to Provide Safety, Health and Work Related Supplies and Equipment To Plaintiff*

121.    Defendants never provided Plaintiff with any supplies and equipment, including but not limited to, thick gloves, face mask, goggles, knee pads or safe fabric uniform, to perform his work duties.

122.    Plaintiff regularly informed Defendants of his need for supplies and equipment for protection.

123.    Defendants refused to and never provided Plaintiff with the minimum and proper work equipment for his health and safety.

124.    Plaintiff for his own health and safety protection purchased his own equipment with his own monies or borrowed equipment from the building Superintendent.

125.    From May 2007 to date, Plaintiff has suffered multiple injuries from his work duties, specifically when separating the buildings garbage into recyclables and non-recyclables.

126.    From May 2007 to date, when Plaintiff separated the buildings garbage he has been stuck in the finger by a used needle syringe, bitten by a rat and suffered multiple lacerations on his hands, arms and fingers from glass.

### *Raise in Pay*

127.    From May 5, 2012 to date, Plaintiff has not received any raise in pay from Defendants.

### *Defendants Violations of the Law were Intentional, Knowing, Willful and Deliberate*

128.    Every shift Plaintiff worked was more than ten (10) hours and Defendants never compensated Plaintiff for spread hour wages.

129.    Defendants were aware of their obligations under the FLSA to pay Plaintiff overtime premium pay, but knowingly and/or recklessly disregarded these obligations.

130.    Defendants compensation policies were deliberately designed to attempt to avoid their obligations under the FLSA.

### *FIRST CAUSE OF ACTION*
*Fair Labor Standards Act – Unpaid Overtime*

131.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

132.    At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

133.    At all relevant times, Defendants employed, and/or continue to employ, Plaintiff within the meaning of the FLSA.

134.    Upon information and belief, at all relevant times, Defendants **2844 MGMT** and **940 CORP.,** jointly and severally, had gross revenues in excess of $500,000.00.

135.    Defendants jointly and severally, were required to pay Plaintiff no less than one and one-half (1 1/2) times the regular rate at which he was employed for all hours worked in

excess of forty (40) hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.,* including 29 U.S.C. §§ 207(a)(1) and 215(a).

136.   Defendants willfully, knowingly, deliberately and intentionally failed to pay Plaintiff for time actually worked and for time and one-half overtime wages for hours worked in excess of forty (40) hours per week, and for spread of hours worked in excess of ten (10) hours each day.

137.   As a consequence of not compensating Plaintiff for all hours worked, Defendants jointly and severally, at all relevant times, had a policy and practice of refusing to pay overtime premium pay to their employees for their hours worked in excess of forty (40) hours per workweek, and refusing to compensate their employees for all hours worked above forty (40) in a week.

138.   Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff overtime wages and by failing to compensate him for all hours worked above forty (40) in a week.

139.   As a result of Defendants actions, jointly and severally, failure to record, report, credit and/or compensate Plaintiff, Defendants' have failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of FLSA, 29 §§ 201, *et seq.,* including 29 U.S.C. §§ 211(c), 207(a)(1) and 215(a).

140.   In failing to compensate Plaintiff for all hours worked above forty (40) in a week, Defendants violated the FLSA and the regulations thereunder, including C.F.R. §§785.13, 785.11.

141.     This cause of action does not include gap time; it is limited only to uncompensated hours that were worked above forty in a week.

142.     Due to Defendants willful, reckless disregard and deliberate violations of the FLSA, a three (3) year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled for a three (3) year statute of limitations.

143.     As a result of Defendants violations of the FLSA, Plaintiff has suffered damages by being denied overtime wages and by being denied compensation for all hours worked above forty (40) in a week in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under 29 U.S.C. § 216(b).

### *SECOND CAUSE OF ACTION*
*New York Labor Law – Unpaid Overtime*

144.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

145.     Defendants are employers within the meaning of NYLL § 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff.

146.     Under the NYLL and supporting New York State Department of Labor Regulations, including 12 N.Y.C.R.R. § 142.2.2, Defendants were required to pay Plaintiff one and one-half (1 ½) times his regular rate of pay for all hours worked in excess of forty (40).

147.     During all the times herein mentioned, Defendants knew or should have known that Plaintiff was entitled to compensation for time actually worked and for time and one-half overtime pay under the FLSA and NYLL.

148.     As a consequence of not compensating Plaintiff for all hours worked, Defendants failed to pay the overtime wages to Plaintiff for which he was entitled under the NYLL.

149.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff the correct amount of overtime wages.

150.    Due to Defendants violations of the NYLL, Plaintiff is entitled to recover from their unpaid wages, liquidated damages, reasonable attorneys' fees, costs and pre and post-judgment interest.

### THIRD CAUSE OF ACTION
*New York Labor Law 12 NYCRR § 142-2.4 – Spread of Hours Wages*

151.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

152.    Defendants are employers within the meaning of NYLL § 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff and the Rule 23 Class Members.

153.    Under the NYLL and supporting New York State Department of Labor Regulations, including 12 N.Y.C.R.R. § 142.2.4, Defendants were required to pay Plaintiff one (1) hour's pay at the minimum hourly wage rate, in addition to the minimum wage required in any day in which the spread of hours exceeds ten (10) hours.

154.    During all the times herein mentioned, Defendants knew or should have known that employees were entitled to compensation at the minimum hourly wage rate, in addition to the minimum wage required, for any day in which the spread of hours exceeds ten (10) hours for spread of hours under NYLL.

155.    Defendants failed to pay the Plaintiff spread of hours wages to which he was entitled under the NYLL.

156.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay the Plaintiff the correct amount of spread of hours wages.

157.    Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from his unpaid wages, spread of hours wages, liquidated damages, reasonable attorneys' fees, costs and pre and post-judgment interest.

### FOURTH CAUSE OF ACTION
*New York Labor Law – Off-The-Clock-Work*

158.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

159.    Defendants failed to compensate Plaintiff for all hours they worked.

160.    In failing to compensate Plaintiff for all hours worked, Defendants violated the NYLL and the regulations thereunder, 12 N.Y.C.R.R. § 141-1.2, 1.4.

161.    As a result of Defendants violations of the NYLL, Plaintiff has suffered damages by being denied compensation in accordance with the NYLL in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the NYLL.

### FIFTH CAUSE OF ACTION
*New York Labor Law – Recordkeeping Violations*

162.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

163.    Defendants have willfully failed to supply Plaintiff with the required Notice and Acknowledgement of Pay Rate and Payday under NYLL § 195.1.

164.    Due to Defendants violations of NYLL § 195.1, Plaintiff is entitled to recover from Defendants fifty dollars ($50.00) for each work week that the violations occurred or continue to occur, or a total of two (2) thousand five hundred dollars ($2,500.00), as provided for by NYLL § 198(1)-b, reasonable attorneys' fees, costs, injunctive and declaratory relief.

### *PRAYER FOR RELIEF*

**WHEREFORE**, plaintiff, ***DOWLAT RAMPERSAUD***, respectfully requests this Court grant the following relief:

A. A Declaratory Judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

B. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

C. An award of unpaid overtime compensation under the FLSA and the NYLL;

D. An award of unpaid compensation for off-the-clock work under the NYLL;

E. An award for failing to provide the NYLL § 195.1 Notice to Plaintiff.

F. An award of liquidated and/or punitive damages as a result of Defendants willful failure to pay overtime compensation under the FLSA;

G. An award of liquidated and/or punitive damages as a result of Defendants willful failure to pay overtime compensation and off-the-clock work under the NYLL;

H. Equitably tolling the statute of limitations under the FLSA;

I. An award of prejudgment and post-judgment interest.

J. An award of costs and expenses of this action together with reasonable attorney and expert fees; and

K. For such other and further relief as may be just and proper herein.

Dated: New York, New York
    May 10, 2016

Yours, etc,

DEVON M. WILT
Attorney for Plaintiff
**DOWLAT RAMPERSAUD**
7 Dey Street, Suite 1401
New York, New York 10007
(212) 406-9200

Index No.:         Year                  RJI No.:                         Hon:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOWLAT RAMPERSAUD,

                                Plaintiff,

    -against-

940 CORP., 2855 MGMT, LLC, MICHAEL GOLDBERG,
JENNARY DUFRESNE, JENNY LNU and JOHN DOE 1,
Jointly and Severally,

                                Defendants.

## COMPLAINT

**DEVON M. WILT**
Attorney for Plaintiff
Office & Post Office Address, Telephone
**7 DEY STREET**
**NEW YORK, N.Y. 10007**
**(212) 406-9200**

To:                                            Signature (Rule 130-1.1-a)

Print name beneath

                                          Attorney(s) for

Service of a copy of the within
Dated,

                                          is hereby admitted.

                                          Attorney(s) for

Please take notice
į NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within names court on
į NOTICE OF SETLEMENT
that an order of which the within is a true copy will be presented for settlement to the HON.
one of the judges of the within names court, at
                                                on

To:                                       Yours, etc.
                                       DEVON M. WILT
                                       Attorney for Plaintiff
Attorney(s) for:                           **7 DEY STREET, SUITE 1401**
                                       **NEW YORK, NY 10007**